# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Kathleen Diane Johnson,

    Plaintiff,

    v.

Donnie Day, *et al.*,

    Defendants.

Case No. 2:23-cv-885

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Judge Ann Beck ("Judge Beck"), the City of Bellefontaine (the "City"), and Mayor Ben Stahler ("Mayor Stahler," collectively "Defendants") move to dismiss Kathleen Diane Johnson's ("Plaintiff") claims against them. ECF No. 18. For the following reasons, the motion is **GRANTED.**

To begin with, Plaintiff moves the Court to deny the motion to dismiss. ECF No. 22. The Court construes this motion as part of Plaintiff's response and **TERMINATES AS MOOT** the motion.

## I.    FACTS[1]

In April 2022, Donnie Day ("Day"), a sergeant with the Logan County Sheriff's Office (the "Sheriff's Office"), pulled Plaintiff over for allegedly failing to stop at a stop sign. Compl. ¶¶ 4–13, ECF No. 1. At some point, Day removed Plaintiff from her car and arrested her, purportedly for failure to provide

---

[1] The Court accepts the Complaint's factual allegations as true for purposes of the motions to dismiss. *Warner v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022).

identification. *Id.* ¶¶ 14–16. Day handcuffed Plaintiff and put her in the back of his car. *Id.* ¶ 18. After searching Plaintiff's car, Day took Plaintiff to the Sheriff's Office. *Id.* ¶¶ 19–20.

At the Sheriff's Office, a female law enforcement officer searched Plaintiff's person. *Id.* ¶¶ 23–24. Later, Day released Plaintiff and gave her instructions to contact a towing company to get her car. *Id.* ¶¶ 27, 29. Another law enforcement officer told Plaintiff that she would need a court order to have a firearm returned to her (presumably, a firearm was found at some point during Plaintiff's interactions with law enforcement) returned to her. *Id.* ¶ 28. Eventually, after paying a fine but without getting a court order, Plaintiff received both her car and her firearm. *Id.* ¶¶ 30, 39–43. At some point, Judge Beck issued a bench warrant against Plaintiff for failure to appear before Judge Beck. *Id.* ¶ 46.

Based on these facts, Plaintiff sues Day, other law enforcement officers, Judge Beck, the City (and/or Mayor Stahler), and the Logan County Sheriff (and/or Randall Dodds). *See generally, id.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 91 (2017). "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States*

*v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "is a challenge to the sufficiency of the pleading itself," and the trial court therefore takes the allegations of the complaint as true. *Id.* To survive a facial attack, the complaint must contain a "short and plain statement of the grounds" for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (internal quotation marks and citations omitted). A factual attack is a challenge to the "factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598. "[N]o presumptive truthfulness applies to the factual allegations." *Id.* When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (internal quotation marks and citation omitted).

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading]

are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). At the motion to dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Because Plaintiff is proceeding without the assistance of counsel, the Court construes her complaint "liberally" and holds it to "less stringent standards." *Mangum v. Lee*, No. 22-5660, 2023 WL 6130306, at *1 (6th Cir. July 10, 2023) (citation omitted).

### III. ANALYSIS

Plaintiff asserts a claim under 42 U.S.C. § 1983 and state-law claims of assault, battery, "abduction," and intentional infliction of emotional distress against Defendants. Compl. ¶¶ 53–62, ECF No. 1. Defendants move to dismiss all claims against them. ECF No. 18. The Court addresses the federal claims before turning to the state-law claims.

#### A. Section 1983 Claims

##### 1. Judge Beck

Plaintiff's § 1983 claim against Judge Beck is barred by judicial immunity. "It is a well-entrenched principle in our system of jurisprudence that judges are

generally absolutely immune from civil suits for money damages." *Hall v. O'Brien*, No. 22-3663, 2023 WL 5743137, at *2 (6th Cir. Mar. 21, 2023) (quotation marks and citations omitted).[2] There are only two exceptions to this immunity: (1) when judges perform "non-judicial actions"; and (2) "when a judge performs judicial acts in the complete absence of all jurisdiction." *Orta v. Repp*, No. 23-3034, 2023 WL 5666161, at *2 (6th Cir. Sept. 1, 2023) (cleaned up).

Here, Plaintiff asserts claims for money damages against Judge Beck arising out of Judge Beck's decision to issue a bench warrant for Plaintiff's failure to appear. Compl. ¶¶ 2, 46–62, ECF No. 1. This is covered by judicial immunity. *See Hanners v. Jones*, No. 3:06-0613, 2007 WL 9782983, at *3 (M.D. Tenn. June 6, 2007) ("Judicial immunity protects a judicial officer from liability for actions which are judicial in nature, such as the issuance of a bench warrant" (citing cases)).

To the extent Plaintiff argues that either exception to judicial immunity applies, that argument fails. As to the first exception, issuing a bench warrant is a judicial action. *See Patrick v. Butzbaugh*, No. 1:08-CV-1075, 2009 WL 311073, at *3 (W.D. Mich. Feb. 6, 2009) ("[T]here can be no doubt that a judge's decision to . . . issue a bench warrant is a 'judicial function' for which the judge is entitled

---

[2] Some authority suggests that judicial immunity does not bar claims against judicial officers for prospective injunctive relief. *See Evans v. City of Ann Arbor, Michigan*, No. 22-1774, 2023 WL 5146731, at *5 (6th Cir. Aug. 10, 2023). Here, Plaintiff seeks only money damages. *See* Compl., ECF No. 1. Thus, the Court need not address whether Judicial immunity would bar any other type of relief.

to absolute immunity from suit."). As to the second exception, as the municipal court judge presiding over Plaintiff's case, Judge Beck was not acting "in the complete absence of all jurisdiction" when she issued the bench warrant. *See* Ohio Rev. Code § 1901.17, *et seq.* (establishing jurisdiction for Ohio municipal courts). Although Plaintiff apparently believes that Judge Beck had to go through various procedures to "prove" Judge Beck had jurisdiction, that is an incorrect belief. *Cf. Rowe v. Boggs*, No. 1:12-CV-647-HJW, 2013 WL 6410556, at *3 (S.D. Ohio Dec. 9, 2013) ("Plaintiff cannot divest a court of jurisdiction over his criminal conviction simply by declaring that he believes various officers did not swear an oath of office.").

In sum, Plaintiff's § 1983 claim against Judge Beck is barred by judicial immunity and, therefore, is **DISMISSED WITH PREJUDICE**.[3]

### 2. Mayor Stahler and the City

Plaintiff fails to state a claim against either Mayor Stahler or the City.[4]

First, to the extent Plaintiff sues Mayor Stahler in his individual capacity, such claims fail. Other than listing Mayor Stahler in the case caption, Plaintiff

---

[3] Defendants alternatively argue that the *Rooker-Feldman* doctrine bars the claim against Judge Beck. Under that doctrine, a state-court loser cannot bring "a de facto appeal of a state court judgment in federal court." *Evans*, 2023 WL 5146731, at *6 (cleaned up). It is not immediately clear that Plaintiff is attempting to appeal a state-court judgment but, to the extent she is so attempting, any such appeal is barred by the *Rooker-Feldman* doctrine.

[4] Defendants offer some alternative arguments for dismissing Plaintiff's claims against Mayor Stahler and the City. Mot., ECF No. 18. Because the Court finds dismissal warranted for the reasons discussed in this Opinion and Order, the Court does not address Defendants' alternative arguments.

does not mention Mayor Stahler at all in her Complaint. *See generally*, Compl., ECF No. 1. Thus, as there are no allegations actually aimed at Mayor Stahler, any claim against him in his individual capacity fails. *See Campbell v. Fackler*, No. 3:06-CV-3-H, 2006 WL 777089, at *2 (W.D. Ky. Mar. 24, 2006) (dismissing claims against one defendant because the complaint contained "no allegations of fact" specific to that defendant and, instead, "simply list[ed] him as a defendant").

Next, if Plaintiff is attempting to assert a § 1983 claim against Mayor Stahler or the City on a theory of *respondeat superior*, that claim also fails. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Finally, Plaintiff cannot succeed on a § 1983 claim against Mayor Stahler or the City under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell* and its progeny, "[a] municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* at 60–61 (quoting *Monell*, 436 U.S. at 691).

The Sixth Circuit recently explained the methods through which a plaintiff can pursue municipal liability as follows:

> There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Wright v. City of Euclid, Ohio*, 962 F.3d 852, 880 (6th Cir. 2020) (internal quotation marks and citations omitted). Under any of these theories, a plaintiff must show that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Cnty. Comm'rs of Bryan Cnty., Okl., v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). In other words, "to hold a municipality liable under § 1983, a plaintiff must prove that the municipality's policy or custom caused the alleged injury." *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 286 (6th Cir. 2020) (internal quotation marks and citations omitted).

Here, Plaintiff alleges only that the City was "complicit in [Judge] Beck issuing a bench warrant." Compl. ¶ 51, ECF No. 1. This sole allegation does not allege any official policy, ratification by an official policy maker, inadequate training or supervision, or any custom of tolerance or acquiescence. Moreover, even assuming the "complicity" was an official policy (or one of the other the bases for *Monell* liability) the "complicity" apparently occurred after (or, at best, contemporaneously with) the issuing of the bench warrant. Compl. ¶¶ 46–51, ECF No. 1. As best the Court can tell, the bench warrant is the source of Plaintiff's alleged injury as to Defendants. Thus, any action by the City or Mayor

Stahler that occurred simultaneously to or after Judge Beck issued the bench warrant could not have been the "moving force" behind Plaintiff's alleged injury. See Wright, 962 F.3d at 882 (explaining that allegedly faulty investigations that occurred after the alleged injury cannot be the cause of the plaintiff's injuries). Thus, to the extent Plaintiff asserts a Monell claim, that claim fails.

In sum, Plaintiff's § 1983 claim against Mayor Stahler and the City is **DISMISSED WITH PREJUDICE**.

### B. State-Law Claims

Read very generously, Plaintiff asserts the following state-law claims: (1) assault; (2) "abduction"; (3) battery; and (4) intentional infliction of emotional distress.

Working backward, Plaintiff fails to state a claim for intentional infliction of emotional distress against any of Defendants. Among other elements, to state a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant's conduct was so egregious that it would make "an average member of the community exclaim, 'Outrageous!'." Jones v. Discover Prod., Inc., No. 2:18-CV-99, 2018 WL 11484678, at *2 (S.D. Ohio Dec. 11, 2018) (citing Ohio law).

Neither Judge Beck's decision to issue a bench warrant nor Mayor Stahler's and the City's "complicity" in the same rise to the level of extreme and outrageous conduct. Accordingly, Plaintiff fails to state a claim for intentional infliction of emotional distress.

Plaintiff fails to sufficiently plead the state-law claims of assault, battery, or "abduction" against Defendants. All of Plaintiff's allegations that are aimed at these claims (*e.g.*, the search of Plaintiff's person or her transportation to the Sheriff's office) occurred *before* Judge Beck issued the bench warrant and, by extension, before the City and Mayor Stahler were "complicit" in the bench warrant. *See generally*, Compl., ECF No. 1. Further, none of the allegations that are aimed at Defendants could support a claim of assault, battery, or "abduction." *Id.* As a result, the state-law claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For these reasons, Defendants' motion is **GRANTED**. The § 1983 claim against Defendants is **DISMISSED WITH PREJUDICE**. The state-law claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

The Clerk shall terminate ECF Nos. 18 and 22 and shall terminate Judge Ann Beck, the City of Bellefontaine, and Mayor Ben Stahler as Defendants.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**